UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RYAN LUTER, RALPH LUTER, RALPH BROWN, DWAYNE GARDNER, ELIJAH DAMPIER, AND TEVEN LOCKHART | :<br>:<br>:  No. 3:22-cv-00398-JCH<br>: |
| Plaintiffs, | :<br>:  JURY TRIAL DEMANDED |
| v. | :<br>: |
| TERRASMART, INC. and<br>360 INDUSTRIAL SERVICES LLC | :<br>:<br>: |
| Defendants, | :  MAY 9, 2022 |

**AMENDED COMPLAINT**

**I.   Preliminary Statement**

1. The plaintiffs, Ryan Luter, Ralph Luter, Ralph Brown, Dwayne Gardner, Elijah Dampier, and Teven Lockhart (Collectively referred to as the "Mississippi Six") bring claims of race discrimination, and hostile environment against the defendant Terrasmart Inc. ("Terrasmart") pursuant to 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII") as well as state law claims under Connecticut Fair Employment Practices Act ("CFEPA") and Deprivation of Civil Rights pursuant to Conn. Gen. Stat. §§52-571a and 52-571c.

2. The plaintiffs also bring claims against the defendant 360 Industrial Services, LLC ("360 Industrial Services") for unlawful retaliation pursuant to 42 U.S.C. §1981.

3. The plaintiffs demand a jury trial in this matter.

**II.   Exhaustion of Administrative Remedies, Jurisdiction, and Venue**

4. On or about March 17, 2022, Ryan Luter, Ralph Luter, Ralph Brown, Dwayne Gardner, Elijah Dampier, and Teven Lockhart timely filed their discrimination complaints

against Terrasmart and 360 Industrial Services with the Commission on Human Rights and Opportunities ("CHRO") and with the Equal Employment Opportunities Commission pursuant to these agencies' work-share agreement.

5. On or about March 17, 2022, pursuant to Conn. Gen. Stat. §46a-101, the plaintiffs requested an expedited release of jurisdiction from the CHRO allowing the plaintiffs to bring a civil action for their claims based upon Title VII and CFEPA.

6. Pursuant to Conn. Gen. Stat. § 46a-101, the executive director of the Commission granted such a release on April 29, 2022 with respect to the plaintiffs' cases against Terrasmart.

7. Pursuant to Conn. Gen. Stat. § 46a-101, the executive director of the Commission granted such a release on May 5, 2022 with respect to the plaintiffs' cases against 360 Industrial Services.

8. Jurisdiction is conferred on this Court by 42 U.S.C. § 1981, 42 U.S.C. § 2000e-2 and 28 U.S.C. § 1331. Supplemental Jurisdiction is conferred pursuant to 28 U.S.C. §1367.

9. Pursuant to 28 U.S.C. § 1391(b)(1), venue is proper within this District because most of the tortious acts took place in Connecticut, and the plaintiffs' contracts of employment with the defendants were to be performed in the state of Connecticut. The defendants also operate in Connecticut.

### III. The Parties

#### A. The Plaintiffs

10. At all times mentioned herein, the plaintiff, Ryan Luter, was a resident of Columbia Mississippi. Ryan Luter is African-American.

11. At all times mentioned herein, the plaintiff, Ralph Luter, was a resident of Columbia Mississippi. Ralph Luter is African-American.

12. At all times mentioned herein, the plaintiff, Ralph Brown, was a resident of Columbia Mississippi. Ralph Brown is African-American.

13. At all times mentioned herein, the plaintiff, Dwayne Gardner, was a resident of Hattiesburg, Mississippi. Dwayne Gardner is African-American.

14. At all times mentioned herein, the plaintiff, Elijah Dampier, was a resident of Columbia, Mississippi. Elijah Dampier is African-American.

15. At all times mentioned herein, the plaintiff, Teven Lockhart, was a resident of Prentiss, Mississippi. Teven Lockhart is African-American.

**B. The Defendants**

16. At all times mentioned herein, the defendant Terrasmart was a foreign corporation with its principal place of business in Buffalo, New York.

17. Terrasmart employed more than twenty-five employees. Terrasmart designs, builds, and installs ground mounted utility-scale solar projects.

18. At all relevant times Walt Taylor was a supervisory employee for Terrasmart working at the Quinebaug Solar energy job cite in Canterbury, Connecticut.

19. At all times mentioned herein, Walt Taylor had the authority to fire the plaintiffs and other Terrasmart employees, to provide them with work assignments, and to discipline them.

20. At all times mentioned herein, Houston Wilson was a supervisory employee for Terrasmart working at the Quinebaug Solar Energy Center job cite in Canterbury, Connecticut.

21. At all times mentioned herein, Houston Wilson had the authority to fire the plaintiffs and other Terrasmart employees, to provide them with work assignments, and to discipline them.

22. At all times mentioned herein, the defendant 360 Industrial Services was a foreign

limited liability corporation with its principal place of business in Tempe, Arizona.

23. 360 Industrial Services employs more than twenty-five employees. 360 Industrial Services provides staffing for industrial projects, including solar generation facilities.

## IV. Statement of Facts

24. The six plaintiffs were each recruited by the defendant 360 Industrial Services to work on solar installation projects for Terrasmart in August 2021.

25. Their compensation for the work ranged from $18 - 20/hour plus a per diem.

26. The plaintiffs initially were assigned to work for Terrasmart in Maine.

27. The six plaintiffs then were transferred to work on a solar field construction project for Terrasmart at the Quinebaug Solar Energy Center in Brooklyn and Canterbury, Connecticut.

28. The plaintiffs' started working at the Quinebaug Solar Energy Center on August 30, 2021.

29. Shortly after the plaintiffs started working in Connecticut, one of the lead men (white), told plaintiff Ralph Brown that he needed to be careful because Canterbury was a racist "hick" town. He also told Ralph Brown that a crew of Asian men had been fired for no reason.

30. The same lead man told Ralph Brown that he and the others needed to be careful numerous times.

31. The same lead man told Dwayne Gardner that prior to their arrival, an African-American employee at the job site "went missing."

32. On Monday August 30, 2021, someone asked plaintiff Lockhart what he was doing in this "hick" state. His co-workers made false accusations about his work ethic.

33. On Tuesday, Lockhart went to his foreman, to find out who he could speak to

about the false accusations.  The foreman responded that there was nobody that he could speak to about it.  He stated "If I am up in your face, you are doing something wrong. If I don't, you are all right."

34. On September 1, 2021, a white Terra Smart employee named "John" became angry at Ryan Luter and threatened to "slap this n----" (referring to Ryan).  He stated "as a matter of fact I want to kill all the n ----------".

35. As the other workers sought to intervene, John kept repeating that he wanted to kill the ten n----- from Mississippi and that he was going to get his gun and shoot all ten of them.

36. After making the threat, John went to his car took something out of his car and put it in his pocket.

37. As he was doing so, he kept cursing to himself, saying things like "can't stand those mother-f-------s."

38. John then went to the Terrasmart office on site and spoke to the supervisors, Walter Taylor and Houston Wilson.

39. After John came out of the office, Houston Wilson patted John on the back, and John got onto an ATV and drove away.  He did not leave the work site.

40. After they spoke, one of the supervisors told the lead man working with the crew that included plaintiffs Duane Gardner, Elijah Dampier, and Ralph Brown that the Mississippi plaintiffs were going to be sent home.

41. Gardner, Dampier, and Brown went down to the office to find out why they were being sent home.  Walt Taylor denied having told their supervisor that they would be sent home, and Houston Wilson was dismissive and characterized it as a misunderstanding.

42. On Wednesday afternoon, September 1, 2021, a Terrasmart employee on an ATV

pulled up to plaintiff Lockhart and told him that the company was going to send the plaintiffs' back to Mississippi. He stated that he had seen them at the gas station and at the store, and warned them to be careful. He told plaintiff Teven Lockhart "they do a lot of KKK things."

43. At the end of his shift, the plaintiff Ryan Luter also went to the office with the rest of his crew he had been working with that day to report John's behavior. They confirmed John's threatening behavior to Taylor and Wilson. They told him that they had already spoken to John to try to calm him down. Wilson said that John would probably get terminated.

44. At the end of the day, Ryan Luter told the other plaintiffs that John had threatened to kill them.

45. The defendant Terrasmart had a legal duty to prevent racism and harassment in the workplace for all of its employees.

46. The defendant Terrasmart had a duty to prevent violence in the workplace.

47. The defendant Terrasmart had a duty to train its supervisors to report and remediate racism, harassment, and violence in the workplace.

48. Terrasmart's on site supervisors, Houston Wilson and Walter Taylor, did nothing in response to Ryan Luter's report of John's threatening and racist behavior.

49. Wilson's and Taylor's initial reaction was to protect John, the white employee, and get rid of the Mississippi plaintiffs.

50. Wilson and Taylor never reported it to their supervisors.

51. Wilson and Taylor never reported it to the police.

52. Wilson and Taylor never took any steps to prevent John from returning to work.

53. Wilson and Taylor never took any statements from Ryan Luter or the other witnesses to the threat.

54. The plaintiffs were unable to work on the following day (September 2, 2021) due to heavy rain.

55. On Friday, September 3, 2021, when the plaintiffs reported to the job site to punch in for work, John was present on site.

56. When plaintiff Ralph Luter complained to Walt Taylor as to why John was still present, Taylor told him to leave and told all of the Mississippi plaintiffs to leave.

57. Taylor initially denied that he knew about John's death threat. This was false. Ryan Luter and his crew had reported it directly to him on Wednesday afternoon.

58. Plaintiff Ralph Luter and the others refused to leave the work site, until Terrasmart management agreed to document their statements and document what took place.

59. After plaintiff Luter confronted Taylor and insisted on getting higher level Terrasmart management involved, John suddenly left.

60. Terrasmart Human Resources and the state police were eventually called at plaintiff Ralph Luter's insistence.

61. After speaking with the police and providing statements to Terrasmart, the plaintiffs left.

62. The plaintiffs did not feel safe continuing to work for Terrasmart at the Quinebaug Solar Center project.

**COUNT ONE**         (**HOSTILE ENVIRONMENT – All plaintiffs as to Terrasmart pursuant to 42 U.S.C. §1981**)

63. Paragraphs 1 – 62 are incorporated herein as paragraphs 1 – 62 of this Count One.

64. At all times mentioned herein, the plaintiffs had a contract to work for defendant Terrasmart at the Quinebaug Solar Center in Canterbury, Connecticut.

65. All of the plaintiffs were aware of the circumstances surrounding John's threat to

kill them all based upon their race, as well as the other threatening statements and conduct directed towards them due to their race.

66. All of the plaintiffs were aware that defendant's initial response to the situation was to send them home and protect John.

67. All of the plaintiffs were aware of the defendant's failure to take any steps to protect them or prevent John from returning to work.

68. At all times mentioned herein, the defendant tolerated a hostile environment for African-Americans at the Quinebaug solar Center in Canterbury, CT.

69. At all times mentioned herein, the defendant Terrasmart failed to remediate the hostile environment once it was reported to them.

70. The defendant's conduct created a hostile environment based upon the plaintiffs' race.

71. As a result of the defendant's conduct, the plaintiffs have suffered and will continue to suffer emotional distress.

72. As a result of the defendant's conduct the plaintiffs have suffered and will continue to suffer economic damages.

**COUNT TWO:** **(HOSTILE ENVIRONMENT – All plaintiffs as to Terrasmart pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, 42 U.S.C. 2000(e), as amended by the Civil Rights Act of 1991)**

73. Paragraphs 1 through 72 are incorporated herein as paragraphs 1-72 of Count Two.

74. The plaintiffs' race was a factor that made a difference in the defendants' treatment of them in violation of Title VII.

75. As a result of the defendant's discriminatory treatment, the plaintiff has suffered

economic and emotional harm.

**COUNT THREE:**    **(HOSTILE ENVIRONMENT – All plaintiffs as to Terrasmart pursuant to Connecticut Fair Employment Practices Act ("CFEPA"), Connecticut General Statutes §§ 46a -60(a)(1))**

76. Paragraphs 1 through 75 are incorporated herein as paragraphs 1-75 of Count Three.

77. When plaintiffs made complaints regarding the racially hostile behavior and the death threats, the defendant failed to take adequate remedial action in violation of its own policies as well as CFEPA.

78. As a result of the hostile environment and defendant's failure to prevent or properly remediate it, the plaintiffs have suffered retaliation, intimidation, and humiliation.

79. As a result of the defendants' conduct, plaintiffs have suffered emotional distress, humiliation, embarrassment and mental anguish.

80. As a result of the defendants' treatment of the plaintiffs, they have suffered and will continue to suffer economic and emotional distress.

**COUNT FOUR**    **(ACTION FOR DAMAGES RESULTING FROM INTIMIDATION BASED UPON BIGOTRY OR BIAS – All plaintiffs as to Terrasmart pursuant to Conn. Gen. Stat. § 52-571c)**

81. Paragraphs 1 – 80 are incorporated herein as paragraphs 1 – 80 of this Count Four.

82. John's threat to kill or shoot the n-------s constituted an intent to intimidate and/or harass the plaintiffs based upon their race, and created a reasonable likelihood that he would cause physical contact with plaintiffs, in violation of Conn. Gen. Stat. §53a-181k(3).

83. As a result of this threat, the plaintiffs were injured and have suffered damages to person or property.

84. At all times mentioned herein, the defendant Terrasmart is legally responsible for John's conduct at the work site.

**COUNT FIVE       (ACTION FOR DEPRIVATION OF EQUAL RIGHTS AND PRIVILEGES -- All plaintiffs as to Terrasmart pursuant to Conn. Gen. Stat. §52-571a)**

85. Paragraphs 1 – 84 are incorporated herein as paragraphs 1 – 84 of this Count Five.

86. John, acting alone and/or in conspiracy with other Terrasmart employees, threatened the use of force as provided for in section 53a-62, to deprive the plaintiffs of their equal protection of the laws of the United States and Connecticut, in violation of Conn. Gen. Stat. §53-37b.

87. At all times mentioned herein, the defendant Terrasmart is legally responsible for John;s conduct at the work site.

**COUNT SIX       (NEGLIGENT SUPERVISION – All plaintiffs as to defendant Terrasmart)**

88. Paragraphs 1 – 87 are incorporated herein as paragraphs 1 – 87 of this Count Six.

89. At all times mentioned herein, the defendant Terrasmart had a duty to properly supervise its employee John, to insure that he complied with the laws against discrimination on the basis of race.

90. At all times mentioned herein, the defendant Terrasmart had a duty to provide a safe working environment for all of its employees, including the plaintiffs.

91. Terrasmart, through its employees, agents, and servants, knew or reasonably should have known, that John was prone to violence and racist acts.

92. As a result of Terrasmart's breach of its duty to properly supervise John, he threatened to kill them because of their race.

93. As a result of Terrasmart's failure to properly supervise John, the plaintiffs have

suffered damages.

**COUNT SEVEN**     (NEGLIGENT RETENTION/HIRING – All plaintiffs as to Terrasmart)

94.     Paragraphs 1 – 93 are incorporated herein as paragraphs 1 – 93 of this Count Seven.

95.     Terrasmart knew, or with the exercise of due diligence reasonably should have known that John had a propensity to violence and to commit racist acts at the time of his hire.

96.     Terrasmart knew, or reasonably should have known about John's propensity for violence and racist behavior prior to the incident that occurred on September 1, 2021.

97.     As a result of John's prior conduct, it was reasonably foreseeable to defendant Terrasmart, that John would commit violent acts and engage in racist behavior.

98.     As a result of defendant Terrasmart's breach of its duty to use diligence in hiring, plaintiffs have suffered damages.

99.     As a result of the defendant's failure to take appropriate action based upon John's previous conduct, plaintiff's have suffered damages.

**COUNT EIGHT**     (RETALIATION -- All plaintiffs as to 360 Industrial Services pursuant to 42 U.S.C. §1981)

100.    Paragraphs 1 – 99 are incorporated herein as paragraphs 1 – 99 of this Count Eight.

101.    360 Industrial Services partners with industrial contractors and facilities throughout the country to, *inter alia,* supply craftsmen to perform new construction and maintenance on solar facilities.

102.    The plaintiffs contracted with 360 Industrial Services to obtain positions as solar laborers.

11

103. 360 Industrial Services placed the plaintiffs at the Quinebaug Solar Energy Center in Canterbury, Connecticut in September, 2021 run by Terrasmart.

104. On or about September 3, 2021, the plaintiffs complained to 360 Industrial Services regarding the egregious racial threats, harassment and incidents that had occurred on September 1, 2021 as well as the fact that the aggressor was permitted to return to work on September 3, 2021.

105. Upon information and belief, Terrasmart also informed 360 Industrial Services about the racial harassment and threats that had occurred on September 1, 2021.

106. After the September 1, 2021 incident, the plaintiffs requested that 360 Industrial Services place them at different jobs and work sites.

107. Other positions were available for which the plaintiffs were qualified.

108. 360 Industrial Services has refused and continues to refuse to place the plaintiffs at other jobs or even return their calls.

109. 360 Industrial Services' refusal to place the plaintiffs or assist them in obtaining employment is in retaliation for the plaintiffs' asserting their rights to a nondiscriminatory and safe working environment and for their reporting illegal racial harassment and discrimination in the workplace.

110. Defendant 360 Industrial Services' conduct toward the plaintiffs has been discriminatory and retaliatory.

111. As a result of 360 Industrial's retaliatory refusal to provide placements to the plaintiffs and assist them in obtaining further employment, the plaintiffs have suffered, and will continue to suffer, economic damages.

112. As a result of the defendant's retaliation, the plaintiffs have suffered and will

continue to suffer emotional distress.

**COUNT NINE:** **(RETALIATION - All plaintiffs as to 360 Industrial Services pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e), as amended by the Civil Rights Act of 1991)**

113. Paragraphs 1 through 112 are incorporated herein as paragraphs 1-112 of Count Nine.

114. The defendant retaliated against the plaintiff because of the plaintiffs' protective activity in violation of Title VII.

115. As a result of the defendants' unlawful retaliation, the plaintiffs have suffered economic and emotional harm.

**COUNT TEN:** **(RETALIATION - All plaintiffs as to 360 Industrial Services pursuant to Connecticut General Statutes § 46a-60(a)(4))**

116. Paragraphs 1 through 115 are incorporated herein as paragraphs 1-115 of Count Ten.

117. The plaintiffs' protective activity was a factor that made a difference in the defendant's treatment of them in violation of Title VII.

118. As a result of the defendants' retaliatory treatment, Plaintiffs have suffered economic and emotional harm.

## REQUEST FOR JURY TRIAL

The Plaintiffs request a trial by jury as to all counts.

**PRAYER FOR RELIEF**

WHEREFORE the plaintiff claims:

(a) Economic damages;

(b) Compensatory damages for emotional distress, loss of enjoyment of life's activities, pain, and humiliation;

(c) Punitive damages pursuant to plaintiff's §1981, Title VII of the Civil Rights Act of 1964 and CFEPA;

(d) Treble damages fee pursuant to Conn. Gen. Stat. § 52-571c;

(e) Prejudgment and post judgment interest at the statutory rate;

(f) Attorneys' fees, costs and expenses; and

(g) Such other and further relief as to the Court deems just and proper under the circumstances.

THE PLAINTIFFS

By: *Mary-Kate Smith (ct26820)*
Lewis Chimes (ct07023)
Mary-Kate Smith (ct26820)
Law Office of Lewis Chimes LLC
45 Franklin Street
Stamford, CT 06901
Phone: (203)32407744
Facsimile: (203)969-1319
Email: lchimes@chimeslaw.com
msmith@chimeslaw.com

## CERTIFICATION

       This is to certify that on May 9, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Kyle Roseman
Littler Mendelson, P.C.
One Century Tower
265 Church Street
Suite 300
New Haven, CT 06510


                                                  /S/ *Mary-Kate Smith (ct26820)*
                                                    Mary-Kate Smith