UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RYAN LUTER, RALPH LUTER<br>RALPH BROWN, DWAYNE GARDNER,<br>ELIJAH DAMPIER,<br>and TEVEN LOCKHART<br>    Plaintiffs,<br><br>v.<br><br>TERRASMART, INC. and 360<br>INDUSTRIAL SERVICES LLC,<br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL CASE NO.<br>3:22-CV-00398 (JCH)<br><br><br><br><br><br><br>FEBRUARY 8, 2023 |

**RULING ON MOTION FOR SUMMARY JUDGMENT
(DOC. NO 38)**

I.     **INTRODUCTION**

Plaintiffs Ryan Luter, Ralph Luter, Ralph Brown, Dwayne Gardner, Elijah Dampier, and Teven Lockhart bring this action under section 1981 of title 42 of the United States Code ("section 1981"); Title VII of the Civil Rights Act of 1964 ("Title VII"); and the Connecticut Fair Employment Practices Act ("CFEPA") against 360 Industrial Services, LLC ("360 Industrial"). The plaintiffs allege that 360 Industrial retaliated against them for reporting race-based death threats that the plaintiffs received while working at a job site assigned to them by the defendant.

Before this court is 360 Industrial's Motion for Summary Judgment ("Mot. for Summ. J.") (Doc. No. 38), which the plaintiffs oppose. See Plaintiffs' Objection and Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Pls.' Mem.") (Doc. No. 59). For the reasons set forth below, the Motion for Summary Judgment is denied.

1

## II. BACKGROUND

### A. Factual Background[1]

360 Industrial employs skilled trade workers and provides their services—on a temporary basis—to industrial contractors across the country. See Plaintiff's Local Rule 56(a)2 Statement of Facts ("Pls.' 56(a)2 Stmt.") ¶ 5 (Doc. No. 70); Defendant's Local Rule 56(a)1 Statement of Facts ("Def.'s 56(a)1 Stmt.") ¶ 5 (Doc. No. 39). In August 2021, plaintiffs Ryan Luter, Ralph Luter, Ralph Brown, Dwayne Gardner, Elijah Dampier, and Teven Lockhart applied to work for 360 Industrial as solar laborers. See Pls.' 56(a)2 Stmt. ¶ 6; Def.'s 56(a)1 Stmt. ¶ 6. Each of the plaintiffs were hired by 360 Industrial in mid-August and they were initially assigned to work on TerraSmart's Hermon Solar Project in Maine starting on August 23, 2021. See Pls.' 56(a)2 Stmt. ¶ 7; Def.'s 56(a)1 Stmt. ¶ 7.

According to the plaintiffs, they were discharged from the Maine site after several days without explanation. See Plaintiff's Local Rule 56(a)2 Statement of Additional Material Facts ("Pl.'s 56(a)2 Stmt. of Add'l Facts") ¶ 2 (Doc. No. 70). On August 30, 2021—following their time at the Hermon Solar Project—the plaintiffs started working on a TerraSmart project at the Quinebaug Solar Energy Center in Canterbury, Connecticut. See Pls.' 56(a)2 Stmt. ¶ 8; Def.'s 56(a)1 Stmt. ¶ 8. On September 1, 2021, a co-worker and 360 Industrial employee named John Aniello ("Aniello") threatened Ryan Luter, adding that he would "get a gun and shoot all of the f***in n*****s." Plaintiffs' Exhibit 2, Affidavit of Ryan Luter ("Ryan Luter Aff.") ¶ 9 (Doc. No. 59–2). His final threat was

---

[1] The court draws primarily from the parties' Local Rule 56(a) statements and supporting exhibits in summarizing the material facts. As it must, the court construes all disputed facts in the light most favorable to the plaintiffs, the non-moving party.

directed at all of the plaintiffs, each of whom is Black.  Id.; see also Pls.' 56(a)2 Stmt. ¶ 6; Def.'s 56(a)1 Stmt. ¶ 6.  Ryan Luter reported the incident to his TerraSmart supervisors who were on site, but nothing was done to protect him and his fellow plaintiffs.  See Ryan Luter Aff. ¶¶ 10–11.

None of the plaintiffs went to the Canterbury Project on September 2, 2021, because the site was shut down due to inclement weather.  See Pls.' 56(a)2 Stmt. ¶ 9; Def.'s 56(a)1 Stmt. ¶ 9.  However, when the plaintiffs arrived on September 3, 2021, they saw Aniello on the premises.  See Ryan Luter Aff. ¶ 14.  One of the TerraSmart supervisors initially demanded that the plaintiffs leave the job site; however, the plaintiffs refused and a 360 Industrial employee eventually called the police.  Id. ¶¶ 15–16; Plaintiffs' Exhibit 6, 911 Call Summary Report ("911 Call Report") at 1 (Doc. No. 59–2).  After providing their statements on the incident to the police and to a TerraSmart supervisor, the plaintiffs left the Canterbury Project.  See Pls.' 56(a)2 Stmt. ¶ 11; Def.'s 56(a)1 Stmt. ¶ 11; Ryan Luter Aff. ¶¶ 17–18.  360 Industrial Managing Partner Eric Ganz conducted an investigation, terminated Aniello's employment, and instructed TerraSmart to remove him from the job site.[2]  See Def.'s 56(a)1 Stmt. ¶ 12.

Three African-American workers—Romar Mingo, Dion Jefferson, and Carl Turner II—elected to remain at the Canterbury Project, but the plaintiffs departed based on concerns about their safety and requested 360 Industrial assign them to another job

---

[2] In their Local Rule 56(a)2 Statement, the plaintiffs deny that this is true.  See Pls.' 56(a)2 Stmt. ¶ 12.  In support, the plaintiffs cite to Ryan Luter's Affidavit to suggest that "[n]o statements were provided to [360 Industrial] by plaintiffs."  Id.; Ryan Luter Aff. ¶ 19 ("I was never given or sent any statements or reports by 360 Industrial services related to the incident that occurred on September 1st.").  Ryan Luter's Affidavit, however, does not support a denial that Ganz took the action described above.  Therefore, the court deems this material fact admitted.  See D. Conn. L. Civ. R. 56(a)(2)(i)–(3); see also Eiden v. McCarthy, 531 F. Supp. 2d 333, 338 (D. Conn. 2008).

site.  See Pls.' 56(a)2 Stmt. ¶ 11–12; Def.'s 56(a)1 Stmt. ¶ 11–12.  360 Industrial offered each of the plaintiffs a new assignment on the Hunt Solar Project in Hunt, New York.[3]  See Def.'s 56(a)1 Stmt. ¶ 14; Dampier Aff. ¶ 22–23; see also, e.g., Plaintiffs' Exhibit 10, Affidavit of Teven Lockhart ("Lockhart Aff.") ¶ 20 (Doc. No. 59–2).  The plaintiffs were contacted on September 11, 2021, about the job, which began two days later.  See Ryan Luter Aff. ¶ 21; Dampier Aff. ¶ 22.

Ralph Luter, Ralph Brown, Elijah Dampier, and Teven Lockhart never accepted the Hunt Solar Project offer as a result of the quick turnaround—one that required a nearly eighteen-hour drive from Mississippi, see Plaintiffs' Exhibit 9, Google Maps Directions from Columbia, Mississippi to Hunt, New York ("Google Maps Directions from MS to NY") (59–2)—as well as their unwillingness to take a job in the northeast following the trauma they endured at the Canterbury Project.  See Lockhart Aff. ¶¶ 20–21; Plaintiffs' Exhibit 11, Affidavit of Ralph Brown ("Brown Aff.") ¶¶ 21–22 (Doc. No. 59–2); Dampier Aff. ¶ 24; Plaintiffs' Exhibit 12, Affidavit of Ralph Luter ("Ralph Luter Aff.") ¶¶ 23–24 (Doc. No. 59–2).  Despite this, the four men were incorrectly labeled as "no show[s]" at the Hunt Solar Project and did not receive any other job opportunities from 360 Industrial.  See Lockhart Aff. ¶ 22; Brown Aff. ¶ 24; Dampier Aff. ¶ 25; Ralph Luter Aff. ¶ 26.  Ralph Luter and Ralph Brown attempted to secure additional employment through 360 Industrial in the Mississippi area, but they were not given any opportunities.

---

[3] Plaintiffs' Local Rule 56(a)2 Statement challenges the veracity of this claim.  See Pls.' 56(a)2 Stmt. ¶ 14.  Review of the Affidavits to which the plaintiffs cite, however, offers support for the defendant's material fact as opposed to plaintiffs' denial.  See, e.g., Plaintiffs' Exhibit 4, Affidavit of Elijah Dampier ("Dampier Aff.") ¶ 22–23 (noting both that Dampier was "personally notified of a job opportunity by 360 Industrial . . . at Hunt Solar Project in Hunt, New York" and that Dampier "informed all of the Mississippi plaintiffs about the Hunt, New York job.").  Accordingly, this material fact is deemed admitted.  See D. Conn. L. Civ. R. 56(a)(2)(i)–(3); see also Eiden, 531 F. Supp. 2d at 338.

See Brown Aff. ¶ 23; Ralph Luter Aff. ¶ 25.  Similarly, Elijah Dampier expressed interest in employment opportunities based in Virginia, but he was told there was no work available in the state.  Dampier Aff. ¶ 21.

Ryan Luter was directly contacted by 360 Industrial about the Hunt Solar Project job.  See Ryan Luter Aff. ¶ 21.  On the morning of September 13, 2021, he requested that his start date be pushed back to allow for sufficient travel time from Mississippi to New York, and 360 Industrial assented.  Id. ¶¶ 22–23; see also Plaintiffs' Exhibit 14, Text Messages Between Ryan Luter and 360 Industrial ("Ryan Luter Texts with 360 Industrial") (Doc. No. 59–2).  However, later that day, Ryan Luter received a text message from 360 Industrial employee Michael Latimer indicating that the work placement of Luter and the other plaintiffs was cancelled because none of them reported to the site.  See Plaintiffs' Exhibit 15, Additional Text Messages Between Ryan Luter and 360 Industrial "Add'l Ryan Luter Texts with 360 Industrial") (Doc. No. 59–2).  Latimer added that "[t]here will be other projects soon."  Id.  Nevertheless, Ryan Luter did not receive any additional job opportunities from 360 Industrial after being identified as a "no show" at the Hunt Solar Project.  See Ryan Luter Aff. ¶ 26.

Finally, Dwayne Gardner never sought additional work from 360 Industrial after the incident at the Canterbury Project.[4]  See Pl.'s 56(a)2 Stmt. of Add'l Facts ¶ 16.  Instead, he returned to a local landscaping job in Mississippi.  Id.

---

[4] In light of this, Plaintiffs' Memorandum of Law as well as their 56(a) Statement of Additional Material Facts indicates that they will withdraw his retaliation claim.  See Pls.' Mem. at 6 n.3; Pls.' 56(a)2 Stmt. of Add'l Facts ¶ 16 n.2.  Thus, the court grants summary judgment to 360 Industrial as to all retaliation claims by Dwayne Gardner.

B.  Procedural Background

The plaintiffs filed their Amended Complaint against 360 Industrial—as well as another defendant, TerraSmart, Inc., who filed its own Motion to Dismiss that the court will consider separately, see Motion to Dismiss (Doc. No. 43)—on May 9, 2022.  See Amended Complaint ("Amended Compl.").  In it, the plaintiffs bring three counts of retaliation against 360 Industrial in violation of section 1981 (Count Eight), 42 U.S.C. § 1981; Title VII (Count Nine), 42 U.S.C. § 2000e; and CFEPA (Count Ten), Conn. Gen. Stat. §§ 46a-60(a)(4).  See Amended Compl. ¶¶ 100–118.

The court now considers 360 Industrial's Motion for Summary Judgment[5] on all three Counts.  See Mot. for Summ. J.; Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem.") (Doc. No. 40); Defendant's Reply in Support of Motion for Summary Judgment ("Def.'s Reply") (Doc. No. 65).  The plaintiffs oppose the Motion.  See Pl.'s Mem.

---

[5] 360 Industrial's Motion is styled as a Motion to Dismiss the Amended Complaint, or, in the Alternative, for Summary Judgment.  See Mot. for Summ. J. at 1.  In determining whether the court should treat a motion as one for summary judgment, "[t]he essential inquiry is whether the . . . [parties] . . . should reasonably have recognized the possibility that the motion might be converted into one for summary judgment or [were] taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleadings."  In re G&A Books, Inc., 770 F.2d 288, 295 (2d Cir. 1985).  Here, the plaintiffs explicitly responded to the motion as if it were one for summary judgment.  See Pls.' Mem. at 2.  Indeed, the plaintiffs relied upon material beyond the pleadings and submitted a Local Rule 56(a)(2) statement in opposition to 360 Industrial's Motion.  See Pls.' 56(a)2 Stmt.; see also, e.g., Plaintiffs' Exhibit 2, Affidavit of Ryan Luter (Doc. No. 59–2).  As such, the court will consider the Motion at issue as one for summary judgment.  See Giammarco v. Beers, 170 F. Supp. 3d 320, 326–327 (D. Conn. 2016); see also Eidshahen v. Pizza Hut of Am., Inc., 973 F. Supp. 113, 114 (D. Conn. 1997) (concluding that because "[b]oth parties briefed for a motion for summary judgement"—with "[p]laintiff submitt[ing] materials outside the pleadings, including an affidavit"—the motion will be "treated as one for summary judgment.").

### III. LEGAL STANDARD

A motion for summary judgment may be granted only when the moving party can establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71-72 (2d Cir. 2016). If the moving party satisfies this burden, the nonmoving party must set forth specific facts demonstrating that there is indeed "a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). A genuine issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016). Unsupported allegations do not create a material issue of fact and cannot overcome a properly supported motion for summary judgment. See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000). In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought." LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).

### IV. DISCUSSION

#### A. Retaliation Under CFEPA

In support of their Motion for Summary Judgment, 360 Industrial argues that the plaintiffs' CFEPA retaliation claim fails because they cannot establish a prima facie case. Def.'s Mem. at 7. In particular, 360 Industrial avers that the plaintiffs did not face an adverse employment action. Id. In opposition to the Motion, the plaintiffs counter

that 360 Industrial's failure to provide them employment opportunities following the incident at the Canterbury Project is an adverse employment action.  Pl.'s Mem. at 4–10.  Moreover, the plaintiffs posit that 360 Industrial's non-retaliatory reason for failing to re-staff the plaintiffs is pretextual, and that the plaintiffs' protest concerning a race-based death threat in the workplace was—at the very least—a motivating factor in 360 Industrial's decision not to provide them with other employment opportunities.  Id. at 8–10.

CFEPA claims are analyzed under the McDonnell Douglas burden-shifting framework.  Bentley v. AutoZoners, LLC, 935 F.3d 76, 88 (2d Cir. 2010) (citation omitted); Tucker v. Journal Register East, 520 F. Supp. 2d 374, 379 n.1 (D. Conn. 2007) ("Connecticut courts examine federal precedent for guidance in construing Connecticut's anti-discrimination statutes.").  The first step is establishing a prima facie case of relation, which demands that a plaintiff demonstrate "(1) participation in a protected activity; (2) the defendant's knowledge of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action."  Zann Kwan v. Andalex Group LLC, 737 F.3d 834, 844 (2d Cir. 2013) (citation and quotation omitted).  To survive a motion for summary judgment, the plaintiff's burden in establishing a prima facie case "has been characterized as 'minimal and de minimis.'"  Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 173 (2d Cir. 2005) (quoting Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001).  "In determining whether this initial burden is satisfied in a [CFEPA] retaliation claim, the court's role in evaluating a summary judgment request is

to determine only whether proffered admissible evidence would be sufficient to permit a rational finder of fact to infer a retaliatory motive." Id.

If a plaintiff meets the "minimal" burden at the prima facie stage, a "presumption of retaliation arises." Id.  The second step shifts the burden to the defendant to "articulate a legitimate, non-retaliatory reason for the adverse employment action." Id. If the defendant can provide such proof, the "presumption of retaliation . . . drops from the case", and step three requires that the plaintiff have sufficient evidence upon which a reasonable juror could find that defendant's "proffered reason was merely a pretext for an unlawful motive." Bentley, 935 F.3d at 89 (citation and quotation omitted).

      1.  Establishing a Prima Facie Case

360 Industrial argues that the plaintiffs' retaliation claim fails at the first step of the McDonnell Douglas framework.  Def.'s Mem. at 7.  360 Industrial focuses on prong 3, positing that the plaintiffs have not demonstrated that they faced an adverse employment action.  Id.  In opposing the Motion, the plaintiffs argue that there is ample evidence in the record from which a rational factfinder could infer a prima facie case as well as a retaliatory motive for the failure to assign the plaintiffs to new positions.  See Pl.'s Mem. at 12.

In the context of retaliation, "[t]he term 'protected' activity' refers to action taken to protest or oppose statutorily prohibited discrimination." White v. City of Middletown, 45 F. Supp. 3d 195, 215 (D. Conn. 2014) (quoting Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2d Cir. 2000).  Protected activities include "making complaints to management, writing critical letters to customers, protesting against discrimination by industry or by society in general, and expressing support of coworkers who have filed

formal charges." Id. (quoting Sumner v. U.S. Postal Serv., 899 F. 2d 203, 209 (2d Cir. 1990). Additionally, plaintiffs need not establish that the conduct opposed violated the law, but rather they must "demonstrate a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." Id.

In the case at bar, there is little question that a co-worker using the n-word in a threat to kill is sufficient to support a "good faith" belief that an employer violated the law. See, e.g., Rogers v. City of New Britain, 189 F. Supp. 3d 345, 355–56 (D. Conn. 2016) ("The alleged use of the [n-word,] even if used jocularly and not by a supervisor . . . is shocking and severe."); Richardson v. N.Y State Dept. of Correctional Service, 180 F.3d 426, 437 (2d Cir. 1999) (noting that "even a single episode of harassment, if severe enough, can establish a hostile work environment"), abrogated on other grounds by Burlington N. & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006); see also Reedy v. Quebecor Printing Eagle, Inc., 333 F.3d 906, 909 (8th Cir. 2003) (determining that racially hostile graffiti that was tantamount to a death threat qualified as "severe"). In addition, the plaintiffs immediately and repeatedly reported Aniello's conduct[6] before walking off the job site as a response to the failure to ensure their safety. See, e.g., Ryan Luter Aff. ¶ 18.

There is also evidence in the record suggesting that 360 Industrial was aware of the incident as well as the plaintiffs' reaction to it. Not only was 360 Industrial employee Latimer the person who called the police on September 3, 2021, see 911 Call Report at

---

[6] Ryan Luter immediately reported the incident to on-site TerraSmart supervisors. See Ryan Luter Aff. ¶ 11. When Aniello was still at the Canterbury Project on September 3, 2021, Ralph Luter insisted that the police and additional supervisors be called to the scene, see Ralph Luter Aff. ¶ 15, and the plaintiffs provided a statement to management once more, see, e.g., id. 16.

10

1, but internal employee profile notes evince 360 Industrial's knowledge of the plaintiffs' complaints and walk out by stating that Ryan Luter, Ralph Brown, Elijah Dampier, and Teven Lockhart "[l]eft [the] site due to an altercation with another 360 employee. [They d]id not feel safe onsite due to threats." See Defendant's Exhibit 2 for Eric Ganz Affidavit, 360 Industrial Employee Profile Notes ("360 Industrial Internal Notes") at 2, 4, 6, 9 (Doc. No. 40–3). Ralph Luter's profile includes a similar entry, though it phrases the basis for the plaintiffs' complaint even more clearly: "Ralph left the site Fri 9/3 along with several others after John Aniello was shouting racial slurs and threatening them. Feared for their lives and went back home." See id. at 3.

The only argument that 360 Industrial raises to challenge that the first two prongs of the prima facie case have been met is by asserting that the Amended Complaint fails to provide sufficient detail regarding who the plaintiffs reported the incident to as well as whether the plaintiffs identified which employees requested assignment to other projects. See Def.'s Mem. at 4. However, 360 Industrial's Motion is being treated as one for summary judgment. See, infra, n.5. As such, the sufficiency of the pleading document is irrelevant. Instead, the plaintiffs must meet the "minimal burden" on the basis of the proffered evidence. See Jute, 420 F.3d at 173. Here, there is more than sufficient evidence in the record from which a reasonable jury could find that the first two prongs have been met.

For a retaliation claim, an adverse employment action must be "materially adverse," that is, it must be "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." Hicks v. Baines, 593 F.3d 159, 162 (2d Cir. 2010) (quotation and citation omitted). Some

examples of adverse employment actions include, "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." Diaz v. Connecticut Light and Power Co., 2014 WL 943122, at *2 (D. Conn. Mar. 10, 2014) (quoting Hoyt v. Andreucci, 433 F.3d 320, 328 (2d Cir. 2006). As the Supreme Court has emphasized, context is crucial to evaluating material adversity:

> The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children. A supervisor's refusal to invite an employee to lunch is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional advancement might well deter a reasonable employee from complaining about discrimination.

Burlington N., 548 U.S. at 69 (quotations and citations omitted).

Here, the plaintiffs style the adverse employment action they faced as a denial of access to job opportunities. See Pl.'s Mem. at 6. Closely resembling a refusal to hire, such an action is harmful to a degree that it could dissuade a reasonable employee from reporting discrimination. See Hicks, 593 F.3d at 165. Indeed, 360 Industrial does not dispute that conclusion, but rather disagrees that it refused to provide the plaintiffs with work opportunities. In particular, the defendant points to the new assignment at the Hunt Solar Project that it offered each of the plaintiffs. See Def.'s 56(a)1 Stmt. ¶ 14. 360 Industrial asserts that the job offer came within a week of the plaintiffs leaving the Canterbury Project and that the Hunt, New York site was closer to the plaintiffs' homes in Mississippi than their prior Maine and Connecticut assignments. See Plaintiffs' Exhibit 5, Google Maps Directions from Canterbury, Connecticut to Hermon, Maine (59–

2); Exhibit 7, Google Maps Directions from Columbia, Mississippi to Canterbury, Connecticut (59–2); Google Maps Directions from MS to NY.

While there is no genuine dispute of material fact that 360 Industrial made the Hunt Solar Project offer, the plaintiffs contend that the "constellation of surrounding circumstances" undermines the genuineness of the offer. See Pls.' Mem. at 9–10. The offer was conveyed on a Saturday with work beginning on a Monday and required the plaintiffs to drive approximately 18 hours from their homes in Columbia, Mississippi to Hunt, New York. See Ryan Luter Aff. ¶ 21; Dampier Aff. ¶ 22; Google Maps Directions from MS to NY. Moreover, it necessitated that the plaintiffs return to the Northeast, where they preferred not to work following their experience at the Canterbury Project. See Lockhart Aff. ¶ 21; Brown Aff. ¶ 22; Dampier Aff. ¶ 24; Ralph Luter Aff. ¶ 24. As such, Ralph Luter, Ralph Brown, Elijah Dampier, and Teven Lockhart all swear they never accepted the offer and never received another opportunity after falsely being labelled as "no show[s]" at the Hunt Solar Project. See Lockhart Aff. ¶¶ 21–22; Brown Aff. ¶¶ 22–24; Dampier Aff. ¶ 24–25; Ralph Luter Aff. ¶¶ 24–26.

The only plaintiff who admits that he accepted the offer, Ryan Luter, requested that his start date be pushed back to allow him time to travel to New York. See Ryan Luter Aff. 22–23; see also Ryan Luter Texts with 360 Industrial. Though the request was initially granted at 10:05 AM on September 13, 2021, at 5:22 PM Latimer texted that Ryan Luter and the other plaintiffs' work placement was cancelled. See Add'l Ryan Luter Texts with 360 Industrial. Despite Latimer's follow up text that "[t]here will be other projects soon", id., Ryan Luter also never received another job opportunity from 360 Industrial. See Ryan Luter Aff. ¶ 26.

13

The plaintiffs argue that this context demonstrates that 360 Industrial's offer was "false and clearly an effort to build a paper trail to cover the fact that that 360 Industrial had blackballed the plaintiffs from future job opportunities." Pls.' Mem. at 9. Taking all the evidence on the record before the court in the light most favorable to the plaintiffs, as the court must at this stage, a reasonable jury could find that the offer was never intended to be accepted and that the plaintiffs did not receive another genuine employment opportunity following their complaints about the racial harassment they experienced. Because there is a genuine dispute of material fact concerning whether the plaintiffs experienced an adverse employment action, the court cannot grant 360 Industrial summary judgment on this ground.

The last component of a prima facie case requires a causal connection between the protected activity and the adverse employment action. "A causal connection of retaliation can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory actions directed against the plaintiff by the defendant.'" Gale v. City of Bridgeport, 2021 WL 4477388, at *10 (D. Conn. Sept. 30, 2021) (quoting Wallen v. Teknavo Grp., 2019 WL 1435879, at *21 (E.D.N.Y. Mar. 30, 2019); see also Brauer v. MXD Grp, Inc., 2019 WL 4192181, at *6 (D. Conn. Sept. 4, 2019). At the prima facie stage of the burden shifting framework, demonstrating "temporal proximity" is generally sufficient to substantiate a causal connection. Zann Kwan, 737 F.3d at 845 ("[A] plaintiff can indirectly establish a causal connection to support a . . . retaliation claim by showing that the protected activity was closely

followed in time by the adverse [employment] action."). While the Second Circuit has "not drawn a bright line to define" the limits "beyond which a temporal relationship is too attenuated to establish a causal relationship", Summa v. Hofstra Univ., 708 F.3d 115, 128 (2d Cir. 2013), a three-week period has been deemed "sufficiently short to make a prima facie showing of causation indirectly through temporal proximity." Zann Kwan, 737 F.3d at 845.

In this case, the plaintiffs aver that the adverse employment action they faced occurred immediately after they left the Canterbury Project and continues through the present day. At the latest, it occurred following the mislabeling of the plaintiffs as "no show[s]" at the Hunt Solar Project less than two weeks later. As such, there is more than sufficient evidence for a reasonable jury to determine that the causal connection prong has been satisfied.

### 2. Legitimate Reasons for Not Providing Employment Opportunities

The second step of the McDonnell Douglas framework shifts the burden back to 360 Industrial to offer a legitimate, non-retaliatory reason for not providing additional employment opportunities to the plaintiffs. Here, this burden is easily met. The Second Circuit has recognized that "refusal to appear for a job or perform job duties is a legitimate, nondiscriminatory reason for adverse employment action." Grasso v. EMA Design Automation, Inc., 618 F. App'x 36, 37 (2d Cir. 2015) (summary order) (citing Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 714 (2d Cir. 1996). According to 360 Industrial, the plaintiffs accepted the Hunt Solar Project offer, "agreed to report to a designated job site on a date certain, then simply failed to appear for work." See Def.'s

Mem. at 7.  As such, this reason is enough for the presumption of retaliation to dissipate.

### 3. Pretextual Motive for Not Providing Employment Opportunities

The third step of the McDonnell Douglas framework shifts the burden back to the plaintiffs to "show that the proffered reason was merely a pretext for discrimination, which may be demonstrated either by the presentation of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more." Sista v. CDC Ixis North America, Inc., 445 F.3d 161, 173 (2d Cir. 2006) (citation omitted).  Put differently, the plaintiffs have the burden of "establishing that it is more likely than not the employer's decision was motivated, at least in part,[7] by an intent to retaliate against [her]."  El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010).

While mere "temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext", El Sayed, 627 F.3d at 933, here, the plaintiffs have come forward with more evidence.  Four of the plaintiffs deny that they ever accepted the Hunt Solar Project job, see Lockhart Aff. ¶¶ 21–22; Brown Aff. ¶¶ 22–24; Dampier Aff. ¶ 24–25; Ralph Luter Aff. ¶¶ 24–26, which would completely undermine the assertion that their failure to report was the reason they stopped receiving job opportunities.  In addition, when Ryan Luter's placement at the Hunt Solar Project was cancelled, he was explicitly told that "[t]here will be other projects soon."  See Add'l

---

[7] Appellate courts in Connecticut have continued to "apply the motivating factor test" in the CFEPA context.  Wallace v. Caring Sols., LLC, 213 Conn. App. 605, 624 (2022).  Considering a recent decision that "the motivating factor test, and not the but-for test, remains the applicable standard for claims of discrimination under CFEPA, regardless of the federal precedent established in Gross and its progeny," id. at 626, this court will apply the motivating factor test here.  See also Antunes v. Lowe's Home Ctrs., LLC, 2023 WL 122042, at *6 n.3 (D. Conn. Jan. 5, 2023).

Ryan Luter Texts with 360 Industrial.  If his failure to report—which also appears to have been excused, see id.—was the sole reason that 360 Industrial stopped providing employment offers, then it is unclear why they initially reassured him that there will be other projects soon.

Moreover, the internal employee profile notes for Ryan Luter, Ralph Brown, Elijah Dampier, and Teven Lockhart all explicitly note that, prior to the incident at the Canterbury Project, there were "no issues with work performed."  See 360 Industrial Internal Notes at 2, 4, 6, 9.  The plaintiffs also note that, in contrast to the Black employees who left the Canterbury site following the racial harassment they faced, the three who stayed "continued to work their assignments, and one of them, Carl Turner[,] continued to get assignments from 360 Industrial even after there was no further work in Connecticut."  Pls.' Mem. at 8; See Defendant's Exhibit 1 for Eric Ganz Affidavit, 360 Industrial Employee Profile Notes at 1–3 (Doc. No. 40–2).

Because a motion for summary judgment requires the resolution of all ambiguities and the drawing of all inferences in favor of the non-moving party, the court determines that the plaintiffs have put forward enough evidence of pretext such that a rational jury could find that 360 Industrial's actions were motivated, at least in part, by retaliatory animus.  Accordingly, 360 Industrial's Motion for Summary Judgment is denied with respect to the CFEPA retaliation claim.

B.     Retaliation Under Section 1981 and Title VII

360 Industrial argues that the plaintiffs' section 1981 and Title VII retaliation claims fail for similar reasons to their CFEPA claim.  See Def.'s Mot. at 1–2.  That is, because retaliation claims under section 1981 and Title VII are analyzed using the same the McDonnell Douglas burden-shifting framework as CFEPA claims, but differ at the

third step where a plaintiff "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." Knight v. Nassau Cty., 852 F. App'x 42, 44 (2d Cir. 2021); see also Zann Kwan, 737 F.3d at 845. In this context, "'but-for' causation does not require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." Zann Kwan, 737 F.3d at 846. For this reason, the Second Circuit has acknowledged that "the determination of whether retaliation was a 'but-for' cause, rather than just a motivating factor, is particularly poorly suited to disposition by summary judgment, because it requires weighing of the disputed facts, rather than a determination that there is no genuine dispute as to any material fact." Id. n.5.

In light of the temporal proximity as well as the significant evidence undercutting 360 Industrial's sole legitimate, non-retaliatory reason for not providing the plaintiffs with additional employment opportunities, the court determines that a rational factfinder could infer that retaliatory animus was the "but–for" cause of 360 Industrial's actions. Given the genuine dispute of material fact on this issue, and the Second Circuit's caution to this District Court in reviewing motions for summary judgment in Title VII retaliation claims, 360 Industrial's Motion for Summary Judgment is also denied with respect to the section 1981 and Title VII retaliation claims.

V.     CONCLUSION

For the reasons stated above, the Motion for Summary Judgment (Doc. No. 38) is denied.

**SO ORDERED.**

Dated at New Haven, Connecticut this 8th day of February 2023.


    /s/  Janet C. Hall
Janet C. Hall
United States District Judge